UNION BANK v. WANDO MINING AND MANUFACTURING CO.

1. Under the charter of a corporation, its stockholders were liable to the extent of the par value of their shares for all its debts that were to be paid within one year from the time the debt was contracted, and that were sued against the corporation within a year after maturity. *Held*, that a judgment against the corporation did not prevent the stockholders when subsequently sued under this provision of the charter, from interposing a defence to their liability on the original debt.

2. After a sale of the property and good will of the corporation to a new

company, and the election of the officers of the old corporation to the same offices in the new, the officers discounted notes of the old corporation in a bank for the purpose of raising money to pay its indebtedness. *Held*, that they then had no power to contract debts that would impose an individual liability on the stockholders under this charter.

3. And the president of this bank having been a director of the old corporation and present at the meeting that authorized the sale, the bank was chargeable with notice of these facts.

4. Other notes were executed by the old corporation during its existence and at maturity successively renewed, and the judgments obtained against the company were based upon these renewal notes, the suits having been brought more than a year after the maturity of the first notes given for the original consideration, but within a year after the maturity of the last renewals. *Held*, that it was incumbent upon the suing creditors in this action to show that the renewal notes were given in payment, without which there was no individual liability on the part of the stockholders.

5. A finding of fact by the master, reversed by the Circuit Judge, approved.

6. But even if these renewal notes were intended to be payment, the officers had no power thus to extend indefinitely the liability of the stockholders, and, no suit having been brought against the corporation upon the original debts within a year after maturity, there was no right of action under this charter against the stockholders.

---

Before THOMSON, J., Charleston, June, 1880.

Hon. W. H. Wallace, of the Seventh Circuit, sat in the place of Mr. Justice McIver, who had an interest in the cause.

This was an action commenced in November, 1878, by the Union Bank of South Carolina, in behalf of itself and other creditors, against the Wando Mining and Manufacturing Company and all its stockholders. Judgment creditors of the defendant company were afterwards called in, and they appeared and presented their claims. The purpose of the action was to recover these debts from the individual stockholders by virtue of the liability imposed upon them in the section of the charter quoted in the opinion of this Court, executions against the company itself having been returned *nulla bona*.

The facts are stated in the opinion. The notes, other than those of the Union Bank, were renewals made payable, some in the words " within one year after date," and others " six months after date," and were all traced back to antecedent

notes which were payable, some "one year after date" and others "two years after date." They were all promissory notes. The notes, when taken up by the company, were all kept and showed indorsements in words, "received interest to date on within, also renewal note for same amount," "received interest on within and new note for principal," "received note in settlement of this note same amount," "received note in renewal," etc. The case was referred to W. D. Porter, Master in Equity, whose report, omitting its statement of facts and some other minor matters, was as follows:

The main question that underlies this whole case is whether the notes sued upon or the original debt for which they were given is the indebtedness for which the shareholder is responsible.

It is conceded in argument that the notes of plaintiff, as well as those sued by Lord & Inglesby, have been traced back to their original debt or considerations, and that no action has been brought within one year from the time such original debt became due. The suing creditors claim that the last note sued on constitutes in each case the debt of the company, and that suit was brought within one year after it became due. Defendants claim that the maturity of the first note in each case was the time the debt became due, and that suit was not brought within one year from such maturity in any of the cases. In all of the cases notes have been *renewed* and brought down to time of suit; as one note matured another was given in place of it, paying only the interest.

The Constitution of 1868 provides, in Art. 12, Sec. 5, Title Corporations, that all general and special Acts passed pursuant to this section shall make provision therein for fixing the personal liability of stockholders under proper limitations. The Act to incorporate the Wando Company provides for a limited several liability, sometimes called an individual liability. Not only is this liability confined to debts of a certain class, and to an amount equal to the shares of capital stock held by each member, but it does not attach until judgment has been obtained against the corporation and *nulla bona* returned on the execution. It is therefore not primary, but secondary; it

is contingent upon the failure of corporate property out of which to raise the money. In this respect, the stockholder is in the nature of a surety or collateral obligor. The liability is only for such debts as are to be *paid* within one year from the time they were contracted, and upon which debts suit has been brought within one year from the time they became due. And the liability is not fixed until, according to the sheriff's return, there is no corporate property that can be levied on. The statutory provisions are the measure of the individual liability of the shareholders. And inasmuch as the liability is restricted, and individual liability is repugnant to the law of corporations, it must be construed with reasonable strictness.

It is true that the fundamental law of the State provides for a personal liability of the stockholders. The character and extent of that liability it leaves to the Legislature. Sometimes it is greater, sometimes less. But the Constitution does not abolish corporations. It recognizes them by the title "corporations" in the Constitution. It recognizes a corporate liability, and a personal liability. It does not confound them, but keeps them separate and distinct. The latter is superadded in a limited degree to the former in certain contingencies, and upon certain conditions; and when this cumulative liability is to be enforced, the contingencies must have arisen, and the conditions have been performed.

There are certainly three classes of persons to be considered in these transactions: 1st, The corporation, an *artificial person* with a defined legal existence; 2d, The shareholder, a *natural person* with a limited several liability; 3d, The creditor: the rights and responsibilities of each must be kept in view.

It is settled law in England and in this country that a promissory note is only an evidence of indebtedness: unless paid, it is no extinguishment of the indebtedness. It fixes the amount of the debt and the time of payment; and if not paid at maturity, the holder may, upon bringing the note into Court, resort to and bring action upon the original cause of indebtedness. It is equally well settled as a general rule, that a renewal of a note is no extinguishment of the old debt, and no creation of a new debt. It is only an extension of the time

of payment.   The process is well known.   When the old note is about to fall due, a new note is put in bank and discounted, with the understanding that the proceeds of the discount are to be applied to the old note.   Mr. Hacker, in his testimony, says that he believed such to be the understanding and such the process in the Union Bank with the Wando Company. Simple renewal is simple extension of time and prolongation of credit.   Really the debt is not paid—it stands as before.

If something else, say, for example, the note of a third person, be accepted in payment, this has been held to extinguish the old debt on the principle of *accord* and *satisfaction*.   Or where a surety gives his note for the debt of the principal which is accepted by some distinct act, it operates as an accord and satisfaction.   It is the *change of security* which operates this effect, but it is not payment; it is accord and satisfaction.   This was the case in *Peters* v. *Barnhill*, 1 *Hill* 234, which was strongly relied on.   In that case it was not the note of the principal debtor, but the note of the surety, a third person, that was held to extinguish the debt.   In these transactions there was no change of security, no intervention of the obligation of third persons; the renewals were pure and simple, and I can find no case where such renewals have been held to extinguish the debt.   A promise that they should so operate would be *nudum pactum*, it would be without consideration, and not binding in law.

But it is urged that Mr. Inglesby, one of the attorneys of the Company, and also of a large number of the creditors, in his testimony affirms and insists that the new notes were given and accepted in payment.   And it is further urged that this may be done under the law of South Carolina, although not under the law of New York.   According to the law of South Carolina an agreement, even though in writing, to be binding, must be upon sufficient consideration.   A note " for value received " is *prima facie* evidence of consideration, but it may be inquired into.

Where would be the considerations for these renewals? During the long series of them for years, the debt still remains the same.   There may be consideration for the extension

of time in the payment of interest, but none whatever for the satisfaction of the debt. The argument of plaintiffs is that the old debt was extinguished whenever a new note was made. That is as much as to say that a debt may be paid by an unfulfilled promise. Promise is not payment. With special care and diligence the Company kept all the notes surrendered, and linked them together by writing "renewal" upon them, so that the chain is perfect. They are traced back to the original cause of indebtedness with entire accuracy.

The cases in our reports that speak of a note being taken in satisfaction of a debt use such expressions as these: "Express agreement," *Costelo* v. *Cave*, 2 Hill, 528; "Special engagement," *Chastain* v. *Johnson*, 2 *Bail.*, 574; "Stipulation," *Bryce* v. *Bowers*, 11 *Rich. Eq.*, 47; and these are accompanied by some act, or by the intervention of some third person or new security. Now where is the evidence of any such "express agreement," "special engagement," or "stipulation?" There must be more parties than one to such a contract. The proper parties would be the bank, which was represented by its president, the Wando Company, which was represented by its president, and the holders of the note, who were represented by their attorneys.

The president of the bank, Mr. Mowry, has not been examined, nor has Mr. Gibbon, the president of the company. They say nothing. And even if Mr. Mowry should testify to such a special agreement, his authority to extinguish a debt by a promise might well be questioned by his board. An authority to renew in the usual way would not imply an authority to renew in such an unusual way. There is no evidence whatever of what the board of the bank, or the board of the Wando Company thought or assented to, in relation to the effect of the renewals. The proof, therefore, of an express, special agreement is not sufficient. Mr. Inglesby's testimony is, without doubt, an honest and strong expression of his understanding in relation to the renewals and their legal effect, but is not such evidence as is required to establish an express contract between all the parties concerned.

But supposing there was such express agreement between

the parties named, could such an agreement, by which a renewal note was to extinguish the preceding debt and create a new debt, bind the individual stockholders upon their limited several liability? The stockholders are to be considered in two lights, first in reference to their corporate liability, and then in reference to their separate individual liability. In relation to the former the directors are their agents, and may bind them within the legitimate range of corporate business affairs. But these shareholders have also private rights and responsibilities which affect their private property as distinguished from their corporate property. Just as a judgment against the corporation cannot bind them except for such debts as they are liable for, so no contracts or agreements of the directors, by which their several liability is affected can bind them without their consent. The statute provides that they shall not be liable for any debt contracted by the Company which is not to be paid within one year from the time the debt is contracted; and therefore, no action of the corporation or the creditor, or both, by which the indebtedness of the corporation is renewed or extended can affect the stockholders. They are not agents of his for any such purpose. He is an integer of the corporation only for corporate purposes. Not only the words of the statute, but its policy also, interpose for his protection.

Manifestly the object of the Legislature was to prevent that very accumulation of indebtedness which is the bane of individuals as well as corporations, and which is now sought to be thrown upon the individual shareholder. The several debts represented by these notes have been rolled along for a series of years, and instead of being paid within the year of their contracting, have been kept alive and perpetuated by the process of bank renewals. It is not intimated, for it is not believed, that there was any sinister or dishonest purpose in this matter. The commercial panic, the great depreciation of real and other property, the over-extension of their business operations, and the fearful rates of interest and commissions that had to be paid for credit and money, are sufficient to account for the result. But a faithful pursuit of the policy indicated by the act

would have gone far to relieve creditors or stockholders from the heavy burden which must fall upon one or other of them.

The debt for which stockholders may be made liable is a debt that is to be paid in one year, and which if not paid is to be sued within one year. Payment is something that discharges the debt, not something that keeps it alive and perpetuates it. But if this process of keeping alive and extending be carried on by the corporation and the creditor, it cannot affect the stockholder whose statutory liability is restricted to one year from the contracting of the debt, and who cannot be held liable unless it be put in suit in one year from its maturity.

But it is argued that the stockholders knew and assented and are therefore bound. The stockholders undoubtedly knew that much more than the capital was invested in *plant*, and that there was a large amount of bills payable. This they knew from the annual reports, and they only met once a year. But what proof is there, or what fact from which they could infer, that there was an arrangement by which their liability, instead of being restricted to debts contracted within a year was extended to debts contracted in a series of years. No such arrangement or contract could be made to bind them without their express assent. The 4th Section of the charter was notice to the creditor. It was enough to put him on inquiry. He and the corporation cannot enlarge or extend the statutory liability of the stockholders by inference and without his express agreement.

The sale of the mines, works, and material on hand, and of the good will of the company's business, was equivalent to a cessation of the company's business. It was not a dissolution, because there was some other property to be sold, and there were debts to be paid. But it was an announcement that the company had ceased to do the business for which it was incorporated. The corporation, its officers and stockholders, were certainly bound by this action. The resolution to sell was unanimously adopted, 2,039 shares, upon a vote by shares, voting for it. To say by unanimous vote, we will do no more new business is to say as plainly as language can speak, we will

create no new debt. The power of the officers to borrow money and make notes, was an implied power, not a power expressly granted. The resolution of 25th June, 1877, and subsequent sale, which took place in July, 1877, was certainly a revocation of the power to bind the company and the stockholders by new debts. It put the company in liquidation, and withdrew the implied power to borrow moneys or create new obligations. The notes upon which the judgments of the Union Bank are founded, all bear date subsequently to the sale ; they are dated in February and March, 1878. They are renewals of old notes. The attorneys of the bank contend that they are new contracts, and new debts contracted as of their respective dates. This view has been discussed elsewhere.

It is also said that the bank is not affected by this action of the company and stockholders. Look at the situation of the parties. Mr. Mowry, the President of the bank, was a director in the company, and Mr. Gibbon, the endorser of the notes, sat at both boards. Messrs. Mowry and Gibbon were both present at the passage of the resolution of 25th June, 1877. It is well known as the usage of banks to intrust ordinary renewals to the president, and here the president and a director sat on the company board. The knowledge of Mowry was official, for it related to the business of the bank, and the bank is bound by the legal effect of his knowledge. The legal effect of the sale was, that although the officers of the company might renew bills payable, in the sense of extending an old debt, they could not renew them in the sense of creating a new debt. *Morse, Banks,* 74.

The main question here under consideration, arose in *Parrott* v. *Colby*, 6 *Hun.*, 55, and it was held that the acceptance of a note did not merge or extinguish the original indebtedness, but only operated to extend the time of payment, and that as plaintiff had not brought his action within one year from the time the original debt became due, the defendant was not liable ; and also that the personal liability of a stockholder in such cases connot be renewed or extended by any renewal or extension of the indebtedness, which the creditor may make with the corporation. This decision, which was well consid-

ered and well reasoned, was affirmed on opinion below by the Court of Appeals, 71 *N. Y.*, 597. The same doctrines are affirmed by the same Court of Appeals, in the case of the *Jagger Iron Company* v. *Walker*, 76 *N. Y.*, 521, with additional force of reasoning. A certified copy of the decision in this case was produced. The reasoning in these cases impresses me as sound and incontrovertible, and I am of opinion that the law of South Carolina is in accord with them.

My conclusion is that judgment should be for defendant stockholders.

The case came up for trial on exceptions to this report, and in April, 1881, his Honor filed the following decree:

The Master, in his report, says:

" The main question that underlies this whole case is, whether the notes sued upon or the original debt for which they were given, is the indebtedness for which the shareholder is responsible. The suing creditor claims that the last note sued on constitutes, in each case, the debt of the company, and that suit was brought within one year after it became due. Defendants claim that the maturity of the first note in each case was the time the debt became due, and that suit was not brought within one year from such maturity in any of the cases. In all of the cases notes have been renewed, and brought down to time of the suit; as one note matured, another was given in place of it, paying only the interest." These extracts from the full and elaborate report of the Master, present the " main question" in the case.

Though the right of a creditor of the Wando Mining and Manufacturing Company to resort to a shareholder for payment of the Company's debt, may not, in strictness, be called a statutory right, still, it is certain, that outside of the statute no such right exists. The Act of Assembly, then, must be our guide in declaring the remedy to be pursued, the circumstances under which the remedy can be enforced, and its extent.

It is needless to rehearse the manifold rules for the construction of statutes, through the application of which the meaning of the Legislature is to be ascertained. There are no better

rules than that words shall receive the meaning they have in common use, and that what is plainly expressed needs no interpretation. Our first step is an examination of the act, and to understand what a creditor would learn from its reading. He would read, that a shareholder was liable for all the debts contracted by the company, to the extent of the par value of his shares, with the condition that the debt was to be paid within one year from the time of contracting it; and that suit must be brought within one year from the time after the debt became due. But he would find no explanation of what is meant by the words, "contracting a debt."

The meaning of these words may, in some degree, be ascertained from the transaction itself, or, rather, from the character of the instruments used in the transaction. These are promissory notes, which, by the indorsement of the payees, may be converted into bills of exchange. They are negotiable papers in the fullest sense. In a word, they are complete contracts in and of themselves. There is no need for the expression of any consideration in them. Though the words, "value received," may be found in them, and it might be necessary, as descriptive of the note, to use the words in a declaration (before the Code), no consideration need be expressed in the note, nor proved in suit upon it. The character of the instrument implies consideration received. It is clear, that any purchaser of a note, before maturity, has the right to require payment, without inquiry into the consideration. Surely, in assumpsit, the indorser or bearer could recover upon the instrument alone, without reference for proof to aught but the note; and, even in debt, between the payee and maker, no consideration must be stated in the declaration.

Thus: supposing the case to be one of renewal only, one complete contract is given up for another, though of the same character; and, if it be asked, as a fact, what is the consideration? it may be answered, the surrender of one note is a good consideration for the giving up of the other. Any disadvantage to one party, or advantage to the other, is sufficient as a consideration. Upon the note surrendered, no action can ever be maintained. It has done its duty, and is gone forever.

A note taken up by the maker, though not paid, can never afterwards be negotiated. It is *functus officio*. *Beck* v. *Robley*, 1 *H. Black.* 89.

Does it not, then, lie upon the party alleging that which is called a renewal or a continuation of the first contract, to show that the new note or contract, complete in itself by law, is, in fact, by the act of the parties dependent upon some former contract, and must take effect in connection with it?

A very material inquiry is, what was the intent of the parties in the renewals made, or in the giving of the new notes? Upon this subject we have the testimony of Mr. Inglesby. As stated by the Master, he "in his testimony affirms and insists that the new notes were given and accepted in payment." Under the circumstances of the case, however, the Master thinks this express agreement is not sufficiently proved; and in the absence of those who also probably knew the facts, but were not produced as witnesses, declines to regard the intent established. If the money had been actually paid when the new notes were given, and immediately thereafter lent to the payees upon the new notes this would certainly be a new loan. What further would be required in this transaction to complete a loan? the payment of the discount.

According to the testimony the interest was paid. What was then the contract between the parties regarded only as a renewal? The debtor stipulated beforehand, or an agreement to the effect existed, that the money was again to be lent to him, or that he was to give a new note for the old note upon payment of the premium or discount. Less than this, the parties could not do to accomplish even an ordinary renewal. Thus the acts necessary to constitute a new debt are the same as those required for a renewal. What, then, constitutes the difference between a renewal and a new loan? Only the intent of the parties. There can be no question as to the intent of the attorney for the creditors; and it is not difficult to believe that the company would be willing for the use of the money to regard the transaction in the character of new loan or contract.

It appears from the testimony and the report of the Master

that eminent counsel had for others loaned large sums of money to the company, and were undoubtedly anxious about the security of the funds. Can it be for a moment supposed with the charter before them, showing the necessity of the debt being contracted within the year to bind the stockholder, that the necessary precautions to place the transaction in the character of a new debt would be omitted.

It is manifest from the testimony of one of the firm, that he regarded no transaction had occurred which would impair the stockholders' liability ; and numerous transactions called settlements, payments, or renewals, had been effected through him. Without giving to any opinion of the attorney the force of a contract between the creditor and debtor, it is certain that on one side, that of the creditor, there was no idea that the transaction was a mere substitute or renewal.

The entries upon the notes surrendered often declare settlement, interest paid, and new note given for principal. These entries were open and known to all parties, and were contemporaneous with the new notes given. One of the most important facts disclosed by such entries is the manner in which the settlements were made. The old note is declared to be *settled* by the amount being *included* or *embodied* in the new note. The old security is declared to be settled (extinguished), and a new note given for the amount.

Can there be a more distinct declaration of the end of one contract and the beginning of a new, or of what the intent of the parties was? The correct view of extinguishment or payment depends upon the agreement of the parties. Even the parting with an old note by the creditor and the acceptance of a new, or the delivery of a note if negotiable without indorsement, may, in the absence of other proof, furnish a presumption of the intention of the parties. But adding the testimony of witnesses, the entries made and the conduct of the parties, the evidence preponderates of the intent of the parties in favor of a new contract, and the extinguishment of the former, which in substance is payment.

Upon acceptance of the charter, the shareholders were bound by all its provisions. We look therein in vain for any power

vesting in the shareholders the right to assent to or dissent from the contracting of debts by the company. The shareholders are in no way required to be parties to the contracts or debts. The act, too, is wholly silent as to the mode of contracting the debt or when it must be contracted to render the shareholders liable. Nor is anything said about a debt continued or renewed. "Debt contracted" are the words of the act and not when was the debt incurred or commenced. The reasonable meaning of the act attaching liability to the shareholder seems to be completed when a contract is made by the company binding it for the payment of a debt.

It is ordered, adjudged and decreed—That so much of the report of the Master as determines that the shareholders of the stock in the Wando Mining and Manufacturing Company are not liable for the par value of their shares to the plaintiff on the ground that the debt was not contracted within the time required by the charter, be reversed, and that the plaintiff recover against the shareholders or stockholders the debt for which suit is brought, as provided by the charter, and have leave to enter or docket judgment accordingly. Also ordered —That the exceptions of the different parties to the Master's report, except as sustained in the decree, be overruled, and that said report, in all its parts, except as reversed in this decree, be confirmed, and its findings of fact and conclusions of law made the judgment of the Court. Ordered—That plaintiff be allowed costs.

The defendants appealed upon the following exceptions:

1. Because his Honor erred in ruling, that the debts set up in this case were incurred within the period required by the charter of the Company, in order to fix the liability of the shareholders.

2. Because his Honor erred in overruling the finding of the Master, as matter of fact, that the notes in question were renewals of other notes running over a period of more than two years, and that his Honor erred in not holding, with the Master, as conclusion of law, that each of such renewals was simply a renewal of the evidence of the debt, and not the creation of a new debt.

3. Because his Honor erred in overruling so much of the Master's report as finds, that by the term, " debt," used in the statute, for which the shareholder may be made responsible, is meant, the original debt contracted by the Company, the subsequent renewals operating as the repetition of the evidence of the debt.

4. Because no one of the notes sued upon comes within the terms of the charter, by which the individual liability of the stockholder is created, not being a debt contracted by the Company, which is to be paid within one year from the time the debt was contracted; and, because none of the suits, in evidence, was brought within one year after the debt became due. And his Honor erred in not so ruling.

5. Because, in no event, can the shareholders be made liable for any contract made by the President of the Company after the corporation had disposed of its lands, factory, and machinery, and had ceased to do business, especially to persons who had notice of this; and that his Honor erred in omitting so to rule.

6. Because, in so far as the charter imposes a liability upon shareholders in the corporation, it is in derogation of the common law, and must be strictly construed.

7. Because the decree of his Honor creates a liability upon persons, for debts contracted by the Company, long anterior to the transfer of shares to them, for which debts, neither they nor the Company, during their connection therewith, received any consideration.

8. Because the decree finds as matter of fact, and holds, as conclusion of law, that the transfer of stock, held as collateral security, constituted such transferees stockholders in the Company, individually liable under its charter.

9. That the Master, having found as matter of fact, that the notes sued by the plaintiff were renewals of other notes, he should also have found that they were usurious. And, in no event could the plaintiff be entitled to interest and costs; and the said notes were not within the scope of the powers of the officers of the corporation, and not chargeable upon the stockholders. And, that his Honor, the presiding Judge, should have so ruled.

10. That his Honor, the presiding Judge, was in error in holding, that a note, payable within twelve months after date, or, within one year after date, is a debt creating an obligation, for which, under the charter, a stockholder is individually liable.

11. Because the testimony shows, that the notes in question, being renewals of previous notes, and could be traced to the original debt with entire accuracy. That many of the notes were either originally, or during their currency, were payable at a period longer than one year after date.

That these matters of fact should have been found by his Honor, and he should, thereupon, have found his conclusion of law, that no such note could be converted by renewal into an obligation of which a stockholder would be held individually liable.

Messrs. *A. D. Cohn, Buist & Buist, J. N. Nathans, J. & J. Hamphill, McCrady & Son, Simonton & Barker,* for appellants.

Messrs. *Hayne & Ficken,* contra.

Mr. *James Conner,* same side.

First. Whether one security operates as payment and satisfaction of another is always a question of intention. The intention is the controlling element, and this may be shown by facts and circumstances as well as by positive proof. 2 *Dan. Neg. Instr.,* §§ 1221, 1259, 1260; 2 *Spears,* 436; 5 *Rich., Eq.* 166; 3 *S. C.* 109; 11 *S. C.* 527; 13 *S. C.* 253; 15 *S. C.* 72, 518 613.

Second. Each of the notes sued upon was intended to be, and was actually accepted in payment of the note which preceded it. The intention was payment or satisfaction, and not substitution. Hence each of the notes sued upon represents a " debt contracted " by the Company, at the time when it was given and accepted in place of the preceding note. The Company and the creditors intended to create a new liability, which might be enforced, irrespective of the time when the " original indebtedness" was contracted.

The notes in question may be divided into two classes: 1st. The five notes sued upon by the Union Bank. 2d. The thirty-eight notes sued upon by the other creditors.

(*a*) *As to the Notes of the Union Bank :* The stockholders are liable for at least three of these, even if the theory insisted on by appellants be correct, that they are " renewals," pure and simple, of loans or debts " originally contracted," at dates anterior to the dates when these particular notes were discounted, for the so-called " original indebtedness" was " contracted," and " became due" less than one year before suit was brought for the collection of the notes sued upon. But respondents maintain that the stockholders are liable for all of the notes held by the Bank, on the ground that a new loan or debt was contracted when each of said notes was discounted. The correct doctrine being that when a "renewal note," as it is called, is discounted, and the drawer is credited with the net proceeds (as was done by the Bank here) and debited with the amount of the old note, which is cancelled and given up to him, a new loan is created, and the debt on the old note is completely extinguished. *Thomp. Liab. Stock.* §§ 101, 298 ; *Ang. & Am. Corp.*, § 620 ; 10 *Serg. & R.*, 63 ; 15 *Serg. & R.*, 163 ; 4 *J. J. Marsh*, 1 ; 1 *McC.*, 358 ; 1 *Strobh.*, 467.

(*b*) *As to the Notes Included in the Second Class* : The testimony shows that these notes were intended to be, and were actually accepted in payment or satisfaction of the preceding notes for which they were exchanged ; and such being the *intention* of the parties, each new note operated as *payment* or *satisfaction* of the preceding note and the debt evidenced by the former note was thereby as completely *extinguished* and *discharged* as if it had been paid in money.

THIRD. The proposition advanced by the appellants that " no contract or agreement of the Directors of the Company by which the stockholders' several liability is affected can bind them without their consent" is wholly untenable. The consent of the stockholders to a contract or agreement of the Directors on behalf of the Company is *not* necessary. The stockholders are bound in their individual capacity for all debts contracted by the Company which are in their nature debts for which

they are liable under the charter. Their liability arises from the nature of the contract. The moment the Company contracts a debt of the sort for which the stockholders are severally liable, the creditor of the Company becomes *eo instanti* a creditor of the *stockholders*. The debt of the company becomes *their* debt at the *instant of its creation*. The contract made by the stockholder was entered into when he became a stockholder. His becoming a stockholder was a *voluntary act*. His liability arose from *that act*. It is a mistake to call it a statute liability. 1 *Comst.* 47; 2 *Otto*, 509; 13 *S. C.* 220.

FOURTH. Appellants' 5th and 9th exceptions affect only the notes held by the Union Bank. The stockholders contend that they are not liable for these notes, *first*, because they were contracted by the President of the Company "after the corporation had disposed of its lands, factory and machinery, and had ceased to do business;" *and secondly*, because the notes were "usurious." *Neither defence*, we submit, *is tenable in this action.*

(1) The President and Directors had *express authority* under the By-Laws of the Company "to manage its affairs and exercise the power and franchises of the Company as they might deem advisable, provided their action in the premises be not inconsistent with the Charter." This authority was *unrevoked* when the notes in question were discounted by the Bank. The resolution of June 25th, 1877, merely "*authorized*" the President and Directors to accept an offer of $75,000 for the factory etc.; but it was left to the Board to wind up the Company's business and settle its affairs "in such manner as they might deem advisable."

(2) The money borrowed from the Bank was honestly applied by the President and Directors to the payment of overdue liabilities of the Company, and by such retention and enjoyment of the proceeds of the notes, the Company has rendered the act of the President in borrowing the money, as binding as if he had been expressly authorized to discount the notes. It will be presumed that he rightfully exercised the power he assumed to exercise, and the Company and the stockholders are estopped from denying it. 101 *U. S.* 351, 181.

(3) In this action the only question open for inquiry, is the

*nature of the debts*, upon which the judgments are founded— do they fall within the class of debts for which the stockholders are individually liable under the charter? There can be but one answer to this question, for the notes are all payable "sixty days after date," and suits for their collection were brought against the company within three months after they became due. We submit that the stockholders as well as the Company are estopped by the judgments already recovered against the Company from averring, *in this action*, that the notes upon which said judgments have been recovered are either "usurious," or that they were "not within the scope of the powers of the officers of the Company," for *the judgments against the Company bind the stockholders*, and were conclusive as well of the *amount due* upon the notes, as of their *validity*. *Freem. Judg.* § 177; *Thomp. Liab. Stock.* § 329; 8 *Abb. Pr. R.* 52; 91 *U. S.* 56.

May 22, 1882. The opinion of the Court was delivered by

MR. JUSTICE WALLACE. The exceptions to the circuit decree are numerous. To consider them in detail would unnecessarily extend this opinion. The issues made by the pleadings depend upon a few decisive questions, in the discussion of which all the material points made in the exceptions will be embraced.

The Wando Mining and Manufacturing Company accepted a charter, and organized and proceeded to do business under it which contained the following provision, to wit:

"SECTION 4. That every shareholder of said company shall be individually liable for the debts contracted during the time he or she shall be a shareholder in said company to the extent of the par value of his or her shares in the same: *provided*, that no person holding stock as an executor, administrator, guardian or trustee, and no person holding such stock as collateral security shall be personally subject to any liability as stockholder of such company, but the person pledging such stock shall be considered as holding the same, and shall be liable as a stockholder accordingly, and the estate and funds in the hands of such executor, guardian or trustee shall be liable in like manner, and to the same extent as the testator or in-

testate or ward or person interested in such trust fund would have been, if he had been living and competent to act and hold the said stock in his own name. *And provided further*, that no stockholder shall be personally liable for the payment of any debt contracted by the said company, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against said company within one year after the debt shall become due, and no suits shall be brought against any stockholder in said company for any debt so contracted unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder in said company, nor until an execution against the company shall have been returned unsatisfied in whole or in part."

After a prosperous business career of several years, the company became embarrassed, and on June 25, 1877, by a unanimous vote of the stockholders passed the following resolution, to wit:

"*Resolved*, That the President and directors of the company be authorized to sell the mines and works on Ashley River, the material now on hand and the good will of the business of the present company to a new company that may be formed to carry on the business, for the sum of $75,000, the new company assuming through its officers the expense of collecting in the assets of the old company."

The sale contemplated by this resolution was effected on the same day and upon the terms set out in the resolution. Mr. George E. Gibbon, the President of the old company, and Mr. Francis B. Hacker, its Secretary and Treasurer, being immediately elected President, Secretary and Treasurer of the new company respectively. The amount realized from the sale was applied to the reduction of the indebtedness of the company. Subsequently, by authority of the shareholders, the Board of Directors sold the company's wharf. Out of all its available assets, the company was not able to pay its debts, and suits were brought against it by its creditors, and judgments obtained which in the aggregate amount to a large sum. Executions upon these judgments having been returned unsatisfied, this

action is brought to establish the individual liability of the stockholders upon the unsatisfied demands against the company. The issues arise mainly under the section of the charter above quoted, the creditors claiming that suits were brought upon their demands within one year from the maturity of the debts, and that their debts were contracted to be paid within one year from the time they were made, and that therefore the individual stockholders became liable upon the return of the executions unsatisfied. All of this is denied by the defendants.

Before proceeding to the examination of this controversy, it will be convenient to consider the issue made upon the notes held by the Union Bank, and upon which judgments have been obtained against the company. There can be no doubt of the rights of the stockholders in this action to set up any available defence that goes to the question of their liability upon the note upon which judgment has been obtained against the company. The defendants in this action were not as individuals parties to the action in which judgment was recovered. That suit was against the corporation which in law is a distinct person from the individual members which compose it. The ground of the liability of the company may not prevail against the stockholders. For it is only when a judgment is obtained against the company upon debts of a certain description, and upon which suits have been brought within a specified time, that the stockholders are liable. In this action it is therefore necessary to establish that the conditions of the liability of the stockholders exist. To do this necessarily involves an inquiry in this action into the grounds of the stockholders' liability. Of course, then, it is competent for these defendants to interpose any defence that goes to the question of their liability upon the notes upon which the judgments were obtained. In *Abbotts' Digest of the Law of Corporations*, 2 *vol., p.* 299, *pp.* 22, 23, the following language occurs: "In New York the liability of the individual members of a joint stock company, after judgment and execution against the company unsatisfied is that of partners, and consists in the original demand against the company, not in the judgment against it. Therefore a

complaint to enforce the liability must show all the facts necessary to constitute a subsisting cause of action against the company on the original demand."

Now as to the notes held by the plaintiff in this action, the defendants allege that they are not liable thereon, because they were made by Geo. E. Gibbon and F. B. Hacker, after the company had ceased to do business, and Gibbon and Hacker had no longer authority to bind them by new obligations. The notes referred to were drawn by Gibbon and Hacker as President and Secretary and Treasurer of the Wando Mining and Manufacturing Company, at sixty days, and dated in February and March, 1878, and endorsed by Gibbon to the bank. The money raised upon them was applied to past due notes of the company. It is conceded in the argument that the President of the company, as such, was authorized to contract debts for the company, and that his contracts would bind the stockholders if the debts were within the description of such as could be set up against them. This power manifestly had its source in his relation as agent *ex-officio* to the company, and of course was limited by the scope of his agency. He was agent to carry out the objects of the company. These objects were the manufacture and sale of fertilizers. Any transaction of his in relation to these objects or that was necessary or incidental in their prosecution, was within the scope of his agency and binding upon the company.

In June, 1877, many months before the notes now held by plaintiff were drawn, the company had sold all of its property that was used in the manufacture of fertilizers, and thus had deprived itself of the present means of carrying on its former business; had sold the good will of the business to another company, and thus bound itself in law not to further continue the business; had appointed the new company its agents to collect its assets. Thus there was no longer any business for the officers to conduct. By the force of these transactions, the reason and foundation of official agency was dissolved. With the disappearance of the reason upon which alone it rested, the power of agency was destroyed. As if in recognition of this result these same officers assumed, before the execution of the

notes under consideration, the same official relations to the new company, that they had sustained to the old, with the same powers of agency, and for the same reasons, and in reference to the same subject matter, and to conduct the same business.

By the force of these facts the former president and secretary of the company were deprived of all power to create new obligations as between the stockholders and all persons having notice of the facts. The outstanding indebtedness was a matter for the attention of the company, its former officers being deprived of such means as the company had for its payment by the withdrawal of the assets from their hands. Mr. Mowry was president of the Union Bank, and a director of the Wando Mining and Manufacturing Company, during all the time of the occurrences which had the effect to deprive the president and secretary of the company of all powers of agency, and was present at the meetings of the company at which they took place, and was president of the bank at the times when these notes were discounted. His knowledge was therefore official, and the bank is bound by the legal effect of his knowledge. These notes of the plaintiff therefore are not obligations upon the individual shareholders of the Wando Mining and Manufacturing Company.

The next question relates to notes that were made by agents of the company before the sale of its property. Actions have been brought upon all the notes against the company, and judgments obtained. It is conceded that all these notes can be and have been traced back through successive notes to their original debt, and that no action has been brought upon any such original debt within one year, after such debt became due. This statement discloses the grounds of controversy between the parties. The suing creditors of the company claim that the notes upon which they have obtained judgments constitute in each case the debt of the company, the former notes in each case having been paid successively by subsequent notes, and that therefore each new note represented a new debt; and that the notes sued upon were new debts that were to be paid within a year, and were sued upon within a year after maturity. Defendants claim that the maturity of the first notes given for

the original consideration was the time the debt, for which they were liable, became due; and that suit was not brought within one year from maturity on any of those notes; that when one note was taken up and another given, it was not payment, but renewal only; that the debt thus having longer than a year to run the conditions of personal liability of stockholders do not exist.

Under the common law no individual liability attached to members of a corporation for the payment of its debts. The liability of the shareholders of this company is created by the charter, and only exists upon the conditions therein stated. If a person who proposed to become a creditor of the company desired to increase the safety of his debt by securing the personal liability of the shareholders, he could do so by making a contract that his debt should be paid within a year. Upon such a debt the shareholders were personally liable. If not paid within the year then to preserve his right to resort to the stockholders, he must bring his action within a year from the maturity of his demand.

Are the suing creditors within these requirements? It appears that the notes they are now seeking to set up were given for previously existing notes, and they for others that existed before them, the original debt in each instance being more than two years old before suit brought, no suit being brought within a year from the maturity of the original debt. Whether the suing creditors, then, are within the requirements of the charter depends upon the question whether these last notes were payments of the previous notes or not. A debt is a legal obligation to pay money. This contract can only be discharged by the payment of money, or by a new contract in relation to the same subject matter by which it is agreed that something else than money will be given and received in discharge of the contract. See *Costelo* v. *Cave*, 2 *Hill*, 528; *Chastain* v. *Johnson*, 2 *Bail.* 574; *Bryce* v. *Bowers*, 11 *Rich. Eq.* 47. The burden of proving this new contract is upon him who affirms it. *Johnson* v. *Clarke*, 15 *S. C.* 72. It is not proved by the mere fact that one note is given for another. There must be additional proof of an agreement between the parties

that one note shall be given and accepted in satisfaction of the other.

The only direct testimony upon that point in this case is that given by Mr. Inglesby, who testifies that his understanding was that the new notes were received in payment of the old. But other parties to these transactions do not testify to such an understanding upon their part, and the writing upon the notes that were taken up and preserved by the company does not indicate that such was the understanding of the officers of the company. We on the whole agree with the Master, before whom the testimony was taken, that "The proof, therefore, of an express special agreement is not sufficient. Mr. Inglesby's testimony is without doubt an honest and strong expression of his understanding in relation to the renewals and their legal effect, but is not such evidence as is required to establish an express contract between all the parties concerned."

Suppose for the sake of the argument that there had been an express agreement between the officers of the company and its creditors that each new note should be given and accepted in full satisfaction and payment of the preceding note. The charter provides that the shareholders shall not be liable upon a debt of the company unless it is contracted to be paid within a year, and if not paid, sued within a year from maturity. Upon the supposition that a new note is accepted as payment of the old at maturity, and at the maturity of the second note another is received in payment of it, and so on indefinitely, would each new note create a new obligation against the company, and binding upon the shareholders under the charter?

There is no actual, only technical payment. Only an agreement between the officers of the company and its creditors that something shall be considered payment, which as matter of fact is not payment. The intent of the statute manifestly is to limit the liability of stockholders to debt,s to be paid within a year. By this supposed understanding between the creditors and officers of the company, it is attempted to extend the liability of shareholders for an indefinite length of time. A construction of a statute that thus plainly defeats its intent cannot be sound.

Nor would the fact that this was done by the agents of the company give it any binding force against the stockholders. For that they are not authorized as agents of the shareholders to do that is plain from the charter, of which all persons dealing with them as agents must take notice. We must therefore conclude that the debts of the company which it is sought to establish against the shareholders are not obligations upon which they are liable.

This conclusion renders the consideration of the special defences of particular shareholders unnecessary. The judgment of this court is that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.